**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ROYCE D. MACK**<br>2646 Bella Via Avenue<br>Columbus, Ohio 43231 | CASE NUMBER: 2:16-cv-90 |
| Plaintiff, | JUDGE: |
| v. | |
| **HUNTINGTON NATIONAL BANK**<br>17 South High Street<br>Columbus, Ohio 43216 | |
| Defendant. | |

## COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF

### JURY DEMAND ENDORSED HEREON

The following allegations are based upon Plaintiff Royce D. Mack's ("Ms. Mack") personal knowledge, the investigation of counsel, and information and belief.  Ms. Mack, through counsel, alleges as follows:

**I.    INTRODUCTION**

1.    Ms. Mack was concerned that Defendant Huntington National Bank ("Huntington") had committed accounting errors, misapplied funds, charged excessive fees, and charged unexplained fees to Ms. Mack's mortgage loan account.  Ms. Mack did not understand her monthly statements. Ms. Mack was concerned about changes made to her monthly payment.  Ms. Mack desired an explanation and an itemization on how the escrow cushion was calculated, the "total fees and charges," "fees paid year to date," and "principal curtailment" amounts appearing on her monthly account statements.

1

2.     On multiple occasions, Ms. Mack contacted Huntington by phone and requested information and documentation.  Ms. Mack became frustrated by Huntington's failure to cooperate.

3.     Ms. Mack, through counsel, sent Huntington a letter requesting information to answer her concerns.  The information and documentation sent to Ms. Mack by Huntington did not address her concerns, led to more confusion, and caused her to have new additional questions.

4.     Ms. Mack, though counsel, sent Huntington a qualified written request ("QWR") with a notice of errors and a request for information regarding the servicing of her mortgage loan. Huntington refused and failed to adequately respond to Ms. Mack's QWR.  As a direct and proximate result of its refusal and failure to adequately respond to the Ms. Mack's QWR, Huntington violated RESPA and is liable to Ms. Mack for damages.

5.     Ms. Mack institutes this action for actual damages, non-economic damages, statutory damages, attorney fees, and the costs of this action for Huntington's multiple violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*

## II.     JURISDICTION

6.     This Court has Federal Question jurisdiction pursuant to RESPA, 12 U.S.C. § 2614 and 28 U.S.C. § 1331.

7.     Venue is proper in the United States District Court for the Southern District of Ohio because Huntington conducts business in this District; the acts which gave rise to this lawsuit occurred in this District, and the real property that is the subject of this action is situated in this District.

### III. PARTIES

8.  Ms. Mack is a natural person living within this Court's jurisdiction at 2646 Bella Via Avenue, Columbus, Ohio 43231.

9.  At all times relevant to the allegations herein, Ms. Mack is a person within the meaning of RESPA at 12 U.S.C. § 2602(5).

10. Huntington is a national bank financial institution organized under the laws of the State of Ohio.

11. At all times relevant to the allegations herein, Huntington was the servicer of Ms. Mack's mortgage loan within the meaning of RESPA at 12 U.S.C. § 2605(i)(2).

12. At all times relevant to the allegations herein, Huntington provided servicing of Ms. Mack's mortgage loan within the meaning of RESPA at 12 U.S.C. § 2605(i)(3).

13. Huntington received periodic payments from Ms. Mack pursuant to the terms of the loan including; but not limited to, escrow, principal, interest, and other charges.

14. Servicing within the meaning of RESPA includes; but is not limited to, collecting payments, maintaining an escrow account, paying property taxes, paying hazard insurance, responding to qualified written requests, enforcing lender rights, and reviewing loss mitigation options for the borrower.

15. Ms. Mack's mortgage loan was originated by the Huntington Bank in whole or in part by deposits and accounts which were insured, guaranteed, supplemented or assisted by an agency of the Federal Government.

16. Ms. Mack's mortgage loan was secured by a lien on residential real property principally designed for occupancy for one to four families.

17. At all times relevant to the allegations herein, Ms. Mack's mortgage loan is a federally related mortgage loan within the meaning of RESPA at 12 U.S.C. §2602(1) *et seq.*

## IV.  FACTUAL ALLEGATIONS

18. Ms. Mack incorporates all other paragraphs in this Complaint by reference as though fully written herein.

19. Each allegation against Huntington is also an allegation of action or inaction by Huntington's agents, predecessors, successors, employees, contractors, assignees, and servicers.

20. Ms. Mack purchased residential real property commonly known as 2646 Bella Via Avenue, Columbus, Ohio 43231 by general warranty deed recorded in the Franklin County, Ohio Recorder's Office on August 23, 2005 ("Bella Via property").  A copy of the Deed is attached hereto as Exhibit A.

21. At all times relevant to the allegations herein, Ms. Mack personally resided at Bella Via property.

22. On August 17, 2005, Ms. Mack financed the Bella Via property with a note secured by a mortgage ("the Note") ("the Mortgage") (collectively, "the Mortgage Loan").  A copy of the Note and Mortgage are attached hereto as Exhibits B and C.

23. On multiple occasions, Ms. Mack contacted Huntington by phone and requested information and documentation.  Ms. Mack became frustrated by Huntington's failure to cooperate.

24. On June 15, 2015, Ms. Mack, through counsel, sent a letter to Huntington.

25. Huntington received the letter on June 18, 2015.

26. Huntington's response to the letter was not adequate. Huntington did not answer Ms. Mack's request for information or provide all of the requested documentation. The information and documentation sent to Ms. Mack by Huntington did not address her concerns, led to more confusion, and caused her to have new additional questions. Ms. Mack used Huntington's response to formulate a new list of errors, questions, and request for documentation.

27. On August 26, 2015, Ms. Mack, through counsel, sent a letter to Huntington. A copy of the letter is attached hereto as Exhibit D.

28. Huntington received the letter on August 31, 2015. A copy of the USPS tracking receipt is attached hereto as Exhibit E.

29. The August 26, 2015 letter to Huntington contained Ms. Mack's name, property address, and account number.

30. The August 26, 2015 letter to Huntington was titled "QUALIFIED WRITTEN REQUEST."

31. The August 26, 2015 letter to Huntington contained a "RESPA DEMAND" and stated that the "letter is a qualified written request ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA), 12 U.S.C. §2605(e)."

32. The August 26, 2015 letter to Huntington was a qualified written request pursuant to the Real Estate Settlement Procedures Act ("RESPA), 12 U.S.C. § 2605(e) that included both a notice of errors and a request for information.

33. The August 26, 2015 letter constituted a QWR within the meaning of RESPA at 12 U.S.C. § 2605(e)(1)(B).

5

34.    The August 26, 2015 letter contained a request for the name, address, and telephone number of the owner of his note pursuant to TILA, 15 U.S.C. § 1641(f)(2).

35.    The August 26, 2015 letter contained a notice of errors in sufficient detail regarding Ms. Mack's account as follows:

> My client disputes the validity of all late fees, charges, inspection fees, property appraisal fees, photography fees, property securitization charges, forced placed insurance charges, legal fees, corporate advances, "*** total fees and charges", and "fees paid year to date" charged to this account.

> My client's written notice of error states as followings:

> 1. the balance due is erroneous due to excessive fees and interest;

> 2. the deferred principal balance is erroneous due to excessive fees and interest;

> 3. charges applied to the account during the year do not add up to the "total fees and charges to date" on her statements;

> 4. fees and charges were applied to the account without explanation; and

> 5. fees and charges were applied to the account without a corresponding bill, invoice, letter, or documentary proof of payment that said charges were actually paid.

36.    The August 26, 2015 letter requested information from Huntington as follows:

> In accordance with my client's rights under RESPA, my client hereby requests information about the fees, costs, and escrow accounting of his loan, including:

> 1. The date that the current note holder acquired the note and mortgage, and from whom they were acquired;

> 2. Copies of all mortgage and note transfers, allonges, and assignments.

3. The date The Huntington National Bank began servicing the loan;

4. An itemized statement regarding the payoff amount on the loan.

5. The current interest rate on this loan and an accounting any adjustments;

6. A copy of the note containing an indorsement;

7. A copy of all appraisals, property inspections, and risk assessments completed for this account;

8. Detailed explanation of how Huntington calculates the allowed cushion in the escrow account;

9. A copy of all documents, figures, calculations, descriptions, and amounts for all charges stated as "*** total fees and charges" appearing on her account statements from the inception of the loan;

10. A copy of all documents, figures, calculations, descriptions, and amounts for all charges stated as "fees paid year to date" appearing on her account statements from the inception of the loan;

11. All documents that supports and/or explains how late fees charged to the account are calculated;

12. A complete list and description of all codes, shorthand, and abbreviations for all charges to her account;

13. An explanation of all amounts listed as "principal curtailment";

14. A complete escrow analysis for the year May 2014 to May 2015; and

15. Your preferred address for receiving QWRs and notices of error, if it differs from the address this QWR was sent to.

37. A Servicer can validly respond to a QWR in three (3) ways. Firstly, a servicer can make

corrections to the account 12 U.S.C. § 2605(e)(2)(A). Secondly, a servicer, following an

investigation, can explain or clarify why the account is already correct 12 U.S.C. § 2605(e)(2)(B). Thirdly, a servicer can, after an investigation, provide the borrower with a written explanation or clarification that includes information requested and explain why information not provided cannot be obtained or provided by the servicer 12 U.S.C. § 2605(e)(2)(C).

38. Huntington acknowledged the receipt of August 26, 2015 letter on September 1, 2015 and responded on September 4, 2015.  A copy of Huntington's acknowledgment and response letters are attached hereto as Exhibits F and G.

39. Huntington responded with a stock boilerplate statement as follows:

> Please understand that in your correspondence you have not indicated a specific error that has occurred on your loan which you're requesting Huntington to investigate. In addition, you have requested extensive information and your request is unduly broad and burdensome. This request reads more like a discovery request than a Qualified Written Request, notice of error or information request. Therefore, **we will not respond to this request** other than what we voluntarily agree to provide as described below.

> [emphasis added]

40. Huntington failed and refused to respond to the August 26, 2015 QWR.

41. Huntington merely copied and sent the same information that it provided in response to Ms. Mack's June 15, 2015 letter.

42. Huntington failed and refused to make any corrections to Ms. Mack's mortgage loan account.

43. Huntington failed and refused to reply to the notice of errors.

44. Huntington failed and refused to state that Huntington corrected the excessive fees and charges to the account; nor did Huntington explain or clarify why it believed the account was already correct.

8

45. Huntington failed and refused to provide Ms. Mack with a written explanation or clarification that includes the information requested and explain why information not provided cannot be obtained or provided by Huntington.

46. Huntington failed and refused to include any steps taken to investigate the notice of errors and request for information.

47. Huntington failed and refused to provide the date that the current note holder acquired the note and mortgage, and from whom they were acquired.

48. Huntington failed and refused to provide copies of all mortgage and note transfers, allonges, and assignments.

49. Huntington failed and refused to provide the date Huntington began servicing the loan.

50. Huntington failed and refused to provide an itemized statement regarding the payoff amount on the loan.

51. Huntington failed and refused to provide a copy of the note containing an indorsement.

90. Huntington failed and refused to provide a copy of all appraisals, property inspections, and risk assessments completed for this account.

52. Huntington failed and refused to provide detailed explanation of how Huntington calculates the allowed cushion in the escrow account.

53. Huntington failed and refused to provide a copy of all documents, figures, calculations, descriptions, and amounts for all charges stated as "total fees and charges" appearing on her account statements.

54. Huntington failed and refused to provide a copy of all documents, figures, calculations, descriptions, and amounts for all charges stated as "fees paid year to date" appearing on her account statements.

9

55. Huntington failed and refused to provide all documents that supports and explains how late fees charged to the account are calculated.

56. Huntington failed and refused to provide a complete list and description of all codes, shorthand, and abbreviations for all charges to her account.

57. Huntington failed and refused to provide an explanation of all amounts listed as "principal curtailment".

58. As a direct and proximate result of Huntington's failure to properly respond to the August 26, 2015 letter and by its failure to correct the errors to her account, improper fees, charges, and interest remained on the account resulting in actual damages to Ms. Mack in the increased amounts she now allegedly owes on the account.

## V.   RESPA VIOLATIONS

59. Ms. Mack incorporates all other paragraphs in this Complaint by reference as though fully written here.

60. RESPA is a remedial consumer protection statute encompassing loan servicing.  Ms. Mack has a right under Federal Law to dispute errors, obtain information, and request documentation from the servicer of their mortgage loan account.   RESPA requires Huntington to investigate and answer Ms. Mack's concerns in order to provide its customers greater access to information about their mortgage loans.  Congress intended to construct a bridge of shared information between Servicers and its customers.

61. Ms. Mack made multiple attempts on her own to obtain answers to her questions, request information, and receive documentation.

62. Ms. Mack, through counsel, sent a QWR to Huntington.

63. Huntington failed and refused to cooperate.

64.  Huntington committed multiple violations of RESPA including, but not limited to:

    a.  Huntington failed to make corrections to the account 12 U.S.C. 2605(e)(2)(A);

    b.  Huntington failed, following an investigation, to explain or clarify why the account is already correct 12 U.S.C. 2605(e)(2)(B); and

    c.  Huntington failed, after an investigation, to provide Ms. Mack with a written explanation or clarification that includes information requested and explain why information not provided cannot be obtained or provided by the servicer 12 U.S.C. 2605(e)(2)(C).

65.  Huntington failed to properly respond and correct errors to Ms. Mack's August 26, 2015 letter in violation of RESPA at 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35 *et seq.*

66.  Huntington violated RESPA by failing to acknowledge, correct, investigate, explain, clarify, or verify as correct any of the disputed charges listed in the notice of errors in Ms. Mack's August 26, 2015 letter.

67.  Huntington violated RESPA by failing to respond to each paragraph as a whole and each subpart of each paragraph in the notice of errors in Ms. Mack's August 26, 2015 letter.

68.  Huntington violated RESPA by failing to properly respond and provide information to Ms. Mack's August 26, 2015 letter in violation of RESPA at 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36 *et seq.*

69.  Huntington violated RESPA by failing to acknowledge, explain, or provide any response to the requests for information listed in Ms. Mack's August 26, 2015 letter.

70.   Huntington violated RESPA by failing to respond to each assertion as a whole and each subpart of each paragraph in the request for information in the August 26, 2015 letter.

71.   Huntington violated RESPA, 12 U.S.C. § 2605(e)(3), by providing information to consumer reporting agencies, within sixty days of receipt of the August 26, 2015 letter regarding overdue payments allegedly owed by Ms. Mack that were related to the August 26, 2015 letter.

72.   Huntington has engaged in a pattern and practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 by violating multiple provisions of RESPA in Ms. Mack's case and with its other borrowers.

73.   As a direct and proximate result of Huntington's failure to properly respond to the August 26, 2015 letter and by failing to correct to the errors to his account; improper fees, charges, and interest thereon remained on the account resulting in actual damages to the Ms. Mack in the increased amounts they now allegedly owe on the account after transfer to the new owner.

74.   As a direct and proximate result of Huntington's failure to properly respond to the August 26, 2015 letter, Ms. Mack has suffered actual damages of emotional distress in the form of anxiety, fear, distress, sleepless nights, mental anguish, and reduced credit rating.

75.   As a direct and proximate result of Huntington's failure to properly respond to the August 26, 2015 letter, Ms. Mack has suffered in an amount equal to the time and effort expended, the expenses accrued in connection with preparing and submitting the June 15, 2015 and August 26, 2015 letters, the expenses accrued in connection with reviewing the responses and lack of responses to the June 15, 2015 and August 26, 2015 letters, including the

expenses for preparing, photocopying, and mailing the June 15, 2015 and August 26, 2015 letters via certified mail, and obtaining all copies of the correspondence.

76. As a direct and proximate result of Huntington's failure to properly respond to the Ms. Mack's letters, Ms. Mack has suffered actual damages for photocopying and postage in the amount of $17.69.

77. As a direct and proximate result of Huntington's failure to properly respond to Ms. Mack's letters, Ms. Mack suffered actual damages in the form of attorney fees exceeding $9,000.00 and $400.00 in court costs.  Attorney fees are actual damages pursuant to RESPA.  All costs were expended for naught had Huntington properly responded to Ms. Mack's letters.

78. Due to Huntington's actions and non-actions, Defendant is liable to Ms. Mack in the amount of her actual damages, the maximum statutory damages available of at least $2,000 for each RESPA violation, attorney fees, and the costs of this action pursuant to 12 U.S.C. § 2605(f).

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** the Ms. Mack respectfully prays this Court grants the following against the Defendant:

a. Assume jurisdiction of this case;

b. Award Ms. Mack maximum actual, economic, non-economic, statutory, punitive, and other damages to be established at trial allowable under the law;

c. Award Ms. Mack actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(F) and 15 U.S.C. § 1640(a);

13

d. Award Ms. Mack the maximum statutory damages in the amount of at least $2,000 for

each RESPA violation, plus attorneys' fees, and costs of the action, including pursuant

to 12 U.S.C. § 2605(f); and

e. Award such other relief as the court deems appropriate.

Dated February 1, 2016

Respectfully Submitted,
RICHARDSON LAW, LLC


s/ Randy Richardson
Randy Richardson, Trial Counsel      (0034456)
*Attorney for Plaintiff Royce Mack*
700 Stonehenge Parkway, Suite 2B
Dublin, Ohio 43017
(614) 401-8238 PH
(818) 638-5548 FAX
Randy@TroyDoucet.com


**JURY TRIAL DEMANDED**

Ms. Mack respectfully requests a jury trial on all triable issues.


s/ Randy Richardson
Randy Richardson, Trial Counsel      (0034456)

14